[Civ. No. 16767.   First Dist., Div. Two.   July 26, 1956.]

MERVYN J. GOODMAN et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Philip S. Ehrlich, Albert A. Axelrod and Young, Rabinowitz & Chouteau for Appellants.

J. T. Harrington, Paul V. DeFord, Jacob Abramson and Henry B. Fulton for Respondents.

DEVINE, J. pro tem.*—In 1872, plaintiffs' predecessors in interest, Alfred and Mariano Gonzales, conveyed to Southern Pacific Branch Railway Company, predecessor of defendant Southern Pacific Company, a right of way at Gonzales in Monterey County, for the railroad to run from San Francisco to Los Angeles. In 1873, they conveyed 20 acres of land surrounding the right of way at Gonzales, and it is this property which is the subject of the present lawsuit. The grant was in fee simple but in it was a defeasance clause to be operative in event the land should not be used for railroad purposes. The action which gives rise to this appeal is one for declaratory judgment, in which plaintiffs seek a declaration of their right to parts of the land which, they allege, are not used for railroad purposes. Judgment having been rendered for defendants Southern Pacific Company and its lessees, plaintiffs appeal.

It is conceded by plaintiffs' that parts of the 20 acres are used for railroad purposes, such as tracks, signal devices, bunkhouses and the like, and plaintiffs do not seek defeasance as to those parts. The other parts of the land may be considered in three categories: land not used at all, land used for businesses which do considerable amounts of shipping by the railroad, and land used by local enterprises which do not patronize the railroad except perhaps incidentally.

The trial court, in declaring the rights of the parties, adjudged that the reversionary right remains, to become effective if the land ceases to be used for railroad purposes. The court held that the railroad has the right to use the property ''for any and all lawful purposes as long as the use for railroad purposes is not obstructed or interfered with and use thereof for railroad purposes does not cease.'' The court found that the uses to which the land was put were for railroad purposes, except that temporary uses under leases and permits have been permitted, and that these temporary uses do not interfere with use for railroad purposes.

◼ We consider first the unused portion of the grant. It was the conclusion of the court that this property was being

*Assigned by Chairman of Judicial Council.

retained for railroad purposes, and the conclusion is well justified by the history of the original grant, by a more recent event described below which shows how the railroad uses develop, and by prospects for the future. When the land was deeded in 1873 it must have been apparent to the grantors that it would be many years before it would be used for purposes having to do with the operation of the railroad. In fact the deed expressly preserved the rights of the then lessees, whoever they may have been. When the main line between San Francisco and Los Angeles was to be built, no doubt the Gonzales family which, according to the testimony, still holds a large area of ranch lands, deemed it worth while to deed the comparatively small rectangle which is the subject of this case. The recent event to which reference has been made is the construction of a spur track a few years ago to a vacuum cooling plant, the track running across an area of the property which had remained unused for some 70 or more years since the grant. As the trial judge noted in his memorandum opinion, had this action been brought 10 or 15 years ago and a forfeiture granted, the town of Gonzales might have lost an industry, and the railroad, a customer. As to the future, there was the testimony of the district freight and passenger agent of the railroad that the unused lands are retained "for future industrial expansion and whatever use it might be required for railroad operating purposes." The trial judge personally inspected the property. He took note of the increase in population of California.

We consider next the subject of those lands which are leased, with 30-day cancellation provisions, to businesses which ship their products by the railroad. These are a plant for manufacture of concrete pipe, a warehouse for seed products, a warehouse for farm supplies and a vegetable shed. These enterprises, which are connected by spur track with the main line of the railroad, shipped a total of 4,735 carloads of freight by Southern Pacific in the years 1941-1953 inclusive, an average of about 32 cars a month, or slightly more than one a day.

The notice of appeal in this case was filed on January 3, 1955. Since then, and on May 27, 1955, the Supreme Court has decided the case of *City of Long Beach* v. *Pacific Elec. Ry. Co.*, 44 Cal.2d 599 [283 P.2d 1036]. In that case, a condemnation proceeding, a merely nominal award had been made by the trial court to the railroad as compensation for an easement for "railroad purposes." It was held that more

than nominal damages ordinarily would be caused by the taking because a railroad may use its right of way for many commercial purposes which contribute to the railroad's business such as a lumberyard, for which purpose part of the railroad's right of way had been leased. Among the uses enumerated in the court's opinion, at p. 603, are such businesses as a manufacturing plant and a grain elevator and warehouse, enterprises almost, if not completely, identical with those in the category now being considered. In the City of Long Beach case, the railroad had an easement only, whereas in the case before us, the railroad holds a fee. We conclude that there was no forfeiture by these uses. Besides defending these uses as being for railroad purposes, respondents raised the defense that plaintiffs acquiesced in these uses, and this defense is discussed in the consideration of the third category, below.

The enterprises which do not make use of the railroad's shipping facilities are a gasoline filling station, a lot for parking used cars for sale and four advertising boards. The first two are on leases with 30-day termination clauses, and the signs, on a permit with 24-hour notice of cancellation. Defendants concede that the present uses of these parcels (the exact measurements of which are not before us, but which, from the map in evidence, are relatively small in comparison to the whole of the grant) are not for railroad purposes; but they contend that generally, and in a permanent way, they are held for the purposes of the railroad, in that the leases and permits may be revoked rapidly if a railroad need arises, and, as stated above, they defend on the ground of acquiescence of plaintiffs to these uses.

We need not decide whether or not, if the latter defense were not available, these leases and permits of these essentially retail enterprises which do not contribute to the railroad's business of transportation could be sustained upon the grounds that the uses do not interfere with railroad operation and that the railroad keeps the tenancies subject to termination on short notice, because of our holding on the subject of acquiescence, as appears below. From a practical standpoint at least, it seems that the possibility of abrupt termination is more of theoretical than of actual importance, because the uses have been long continued, a factor which, indeed, is the basis for the railroad's next considered defense.

These uses the court found to have been open and notorious, and the times elapsing between their commencement

and the date of demand for reentry were, respectively, of the used car lot, 16 years, of the sign, 17 years, and of the filling station, 23 years. Although the statute of limitations was rejected as a defense, the action having been commenced shortly after demand for reentry, the court did sustain the defenses of waiver of the right of reentry and of laches. Prescinding from the defense of laches, wherein we would be faced with the questions whether or not this action for declaratory relief despite its form was substantially an action at law for reentry, and hence not one in which laches would apply, and whether or not damages had been suffered by the defendants by delay, we conclude that the court's holding of waiver of the right of reentry should be sustained.

It was stipulated that the title was held by the railroad in fee simple on condition subsequent. Thus, plaintiffs have, and always have had, a possessory interest consisting, not of a possibility of reverter which would take effect immediately upon the happening of the event named, but of a right of entry for breach of condition. (*City of Santa Monica* v. *Jones,* 104 Cal.App.2d 463 [232 P.2d 55], 1 Simes, Law of Future Interests, § 177, p. 321.)

If the grantor fails to declare a forfeiture within a reasonable time, his power to do so has expired. (*City of Santa Monica* v. *Jones, supra,* at p. 470; 1 Simes, Law of Future Interests, § 170, p. 307.) The trial court's conclusion that such time had expired is fully sustained, and the conclusion applies likewise as an additional defense in respect of the lands in the second category as described above. In that category, the approximate times between the commencement of the uses and the date of demand for reentry were: pipe factory, 23 years, seed warehouse, five years, farm supplies warehouse, 32 years, vegetable packing shed, eight months. The duration for the last of these is relatively short, but it is to be considered in connection with the acquiescence to the other uses. (In two years, 290 carloads were shipped by the railroad from this shed.)

The judgment as it stands perhaps might be subject to the interpretation that the property may be put to any use in the future which does not interfere with railroad purposes. We think that the judgment should be limited, and it is not unlikely that the court intended so to do, to denying forfeiture or reentry because of past and present uses and because of nonuse of part of the land and to retaining in general the reversionary right of plaintiffs. Although the action was de-

nominated one for declaratory relief, essentially it was one to declare a forfeiture, and the answer simply prayed that plaintiffs take nothing. Accordingly, the judgment is modified to deny that forfeiture or reentry be decreed because of past or present use of parts of the land or for nonuse of other parts, and to preserve the reversionary right as contained in the deed. As so modified, the judgment is affirmed. Respondents to recover costs on appeal.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied August 24, 1956, and appellants' petition for a hearing by the Supreme Court was denied September 18, 1956.