OPINION
O’HARA, Judge.
This Court has previously granted defendants’ motion to dismiss in this condemnation action brought by the City of Wilmington by and through the Water Department, to acquire a site on the Greenhill Golf Course. Plaintiff will be referred to as the “City”. The City has moved for reargument relying upon the reasons discussed below.
The City argues that the Court erred in applying the doctrine of prior public use, as set forth in 1 Nichols on Eminent Domain, § 2.2. (“If .... a municipality seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication.”) The City advances several theories to support its position. Stating there has been no showing that erection of the water tower would interfere with the existing use of the land to the extent that its presence would destroy or be tantamount to destruction of the present use, it cites City Council of Greenville v. Thomas, 241 Miss. 633, 131 So.2d 659 (1961) to support *407 its assertion that such interference must be threatened for the prior public use doctrine to require specific legislative authority for the condemnation.
Greenville’s facts distinguish it from the instant case in that the property there in issue had been purchased by the city and because the city’s charter contained relevant specific powers relating to the action it had taken. More important, Greenville contains language suggesting that the prior use rule applies even in the absence to destruction where the city holds the land pursuant to a trust which permits only the prior use.
Immediately after noting that the covenant in the deed required only that the land be used “ ‘.for the purpose of a park * * * ’ ” rather than “ ‘for the purpose of a park only’ ”, the Greenville court stated that specific legislative authority is required only where the new use will destroy or injure the original use. This indicates that destruction would not have been required in Greenville if the deed had provided that the land be used exclusively for park purposes. Presumably, this is because a violation of the trust is sufficient destruction in and of itself.
In related litigation between some of the parties to this action, Vice-Chancellor William Marvel has ruled that construction of the water tower would violate the trust. Lord et al. v. City of Wilmington, Del.Ch. 332 A.2d 414. This Court, of course, will not reconsider that ruling. Therefore, assuming arguendo that erection of the water tower could not be said to be tantamount to destruction of the use of the property for park purposes in the absence of a trust violation, the doctrine of prior public use as modified by the presence of the trust applies to prohibit condemnation in the instant case. City of Buffalo v. Day, Erie Co., N.Y.Supr., 8 Misc.2d 14, 162 N.Y.S.2d 817 (1957). The City’s reliance on the language contained in Nichols is misplaced because that treatise does not indicate that it is concerned with property held in trust.
The City also argues that the prior public use doctrine should not apply because this conflict is not a dispute between two different branches of government. The Court rejects this argument for two reasons. One, this dispute is, in a sense, between two separate branches of government, the Wilmington Water Department and the Wilmington Department of Parks and Recreation. While the parks department is amenable to the new use, the defendants in the instant case have taken up the cause and role of the park department by urging preservation of the park. If a conflict of public interest is required for invocation of the doctrine, such conflict exists. Two, the Court draws some support from City of Torrington v. Coles, 155 Conn. 199, 230 A.2d 550 (1967). There the doctrine was applied to a dispute between the City of Torrington which held parkland and the redevelopment agency of Tor-rington which “is admittedly an arm of the municipality”.
The City relies upon City of Detroit v. Judge of Recorder’s Court, 253 Mich. 6, 234 N.W. 445 (1931) to show that the doctrine does not apply where the dispute is not between two governmental units. That opinion first states that “[t]he instant case must be distinguished from those in which one public corporation is attempting to exercise its power of eminent domain in order to appropriate for a different use property used by and belonging to another public corporation”, and then recites the general prior public use doctrine. While this might suggest that the doctrine should not apply in the absence of such conflict, the opinion indicates that it was “not considering the right of the city to put to a different use the whole or part of a large public park in which the courts have generally held that each and every citizen has an interest”. City of Detroit therefore supplies no authority for applying this distinction to a parkland case. *408 Also, the language might well be considered dicta. When the land was dedicated the city charter contained a provision authorizing the common council to “ ‘alter, vacate and abolish * * * public grounds or spaces within said city’ ”. Moreover, the land had been dedicated for the sole purpose of “adornment of the highway” and the Court noted that instead of adorning the highway the land might be considered to have become a traffic hazard. Presumably, the doctrine of prior public use should not apply where the prior use has become impossible. This being the case, there is no need for City of Detroit to have distinguished itself from the prior public use cases. City of Detroit does not stand for the proposition that the above quoted distinction will justify disregarding the prior public use doctrine where the original use remains viable.
Citing City of Marysville v. Boyd, 181 Cal.App.2d 755, 5 Cal.Rptr. 598 (1960), the City argues that the rule should not apply because the City is the sovereign in this case. A suit to compel the city clerk to execute a deed, Marysville is distinguishable because the city of Marysville had acquired title in fee to the property before the law suit was brought. The court stated “[i]n the instant case all rights and interests in Cortez Square have been condemned to the use of petitioner as trustee to convey to the County of Yuba for the erection of a county courthouse thereon, and the judgment in the condemnation action has become final”. The opinion does not indicate that the condemnation for the purpose of changing the use would have been permitted had it been challenged. Because it is silent on this issue the opinion provides no authority. The City’s suggestion that the prior public use rule should not apply because Wilmington is the sovereign in this case presents a difficult question which is discussed in more detail at the conclusion of this opinion.
Advancing another theory, the City argues that prohibiting condemnation in the instant case would be to confirm the right of the City to bargain away its power of eminent domain. The Court agrees with City of Milwaukee v. Schomberg, 261 Wis. 166, 52 N.W.2d 151 (1952) that the power of eminent domain is inalienable and cannot be bargained away. In Milwaukee the city had been granted an easement over certain property, part of the consideration for the easement being an agreement to not open a street through any of certain property without the consent of the grantors. Assuming that the city has the power to condemn land in which it already has an easement, the court in Milwaukee ruled that it could not bargain away this right. That is different from a situation where the common law deprives a city of the right to condemn land because the city has accepted that land in trust. It is not a bargain but, instead, the operation of law, which has removed the City’s power in the instant case. Were the City’s arguments to be valid in the instant case it could always alter the use of land given it in trust because the argument would apply in every such case. Certainly this is not contended.
The City also asserts that the wording of § 18-4 of the Wilmington City Code provides sufficient authority for it to condemn the land in order to change its use. Under the doctrine of prior public use, specific legislative authorization is, of course, required to authorize condemnation for the purpose of changing a use. In light of the fact that § 16-28 of the Wilmington City Code authorizing the redevelopment authority to condemn “any real property which it may deem necessary” concludes with the sentence “property already devoted to a public use may be acquired in the like manner”, the Court finds that the omission of specific authorization to acquire public property from § 18-4 was intentional. In light of the requirement that a municipal agency must be specifically authorized to condemn public property, the Court finds that the grant to the Board of Water Commissioners to condemn “any *409 lands” does not contain sufficient specificity to empower the Board to take public lands.
Finally, the City argues that although the land in question is public it has the power to condemn the private interests of the defendants. This is indeed true. However, that does not affect the City’s inability to condemn the public rights in the parkland.
As noted above, the City’s suggestion that it is a sovereign and its citation of § 1-101 of the Wilmington City Charter raises interesting questions. Does § 1-101 by stating “the City shall have and exercise all express and implied powers and authority of local self-government and home rule, which, under the Delaware Constitution, it would be competent for the General Assembly to grant the City by specific enumeration and which are not denied by general statute” require that the Court treat the City as though it had been given the specific legislative authority required by the prior public use doctrine? Or, in light of 22 Del.C. § 802, which states that a city man “amend its charter so as to have and assume all” such powers, should a charter revision be required to give specific authorization? Is the City correct in stating that it is a sovereign in this case? A ruling that pursuant to § 1-101, and 22 Del.C. § 802, Wilmington is the sovereign for the purpose of this taking would raise the question of whether the prior use doctrine remains applicable, because Wilmington remains a municipality, or is rendered inapplicable because it is a sovereign. If the prior use doctrine is inapplicable can the Water Department condemn the land without specific authorization from the City? If authorization is required, what form must it take? If the prior use doctrine is applicable, is there a reason why specific state legislative authorization might still be required in spite of § 1-101 of the Charter and 22 Del.C. § 802?
The basic question of the position of the City with respect to sovereign rights, which might be developed through answers to the questions posed herein by the Court, has not been faced by the parties in their arguments heretofore. The Court is of the opinion that all other matters raised by defendants’ motion to dismiss have been dealt with in the Court’s earlier opinion and in this consideration of the City’s motion for reargument and that, therefore, defendants’ motion to dismiss should be granted.
However, the Court having raised some complex problems with respect to sovereignty, in this opinion, it believes that both parties should have an opportunity to be heard with respect to the matter before any final disposition is made of this current motion for reargument. Therefore, counsel are directed to schedule an appointment with the Court within the next ten (10) days when a procedure for dealing with this remaining issue can be established.